By the Court.
Hoffman, J.
— The proposition of the plaintiffs is, that whatever might be the goods shipped, they were to receive the same rate of freight as if hides had been shipped. The price per ton of whatever might be carried, was to be calculated and adjusted, so as to amount to the sum total of the freight, which the capacity of the ship would enable her to earn for hides, at £6 per ton.
On the other side, the defendants insist that some rule of proportion is plainly contemplated. If other goods are shipped, the freight is to be adjusted upon a comparison with something in relation to something. If the contract had been as the plaintiffs contend, it would have been perfectly simple to have said, that full freight as for hides at £6 per ton, should in all events be paid, the capacity of the vessel to carry hides being all that was undetermined; in short, that the freight shall be such for other goods, as will give the same amount as if the vessel had been filled with hides.
But when the instrument declares, that freight for other goods shall be at proportionate rates, a comparison of rates is indicated and directed.
We concur in this view; and we think that the method of solving the question suggested by the defendants' counsel is a correct one.
The freight stipulated to be paid for hides must necessarily bear a certain proportion to the rate of freight for hides, had the ©barter been made at Buenos Ayres. That proportion is found to- be fifty per cent; that is, the rate agreed upon is fifty per cent more than that from Buenos Ayres would have been. The articles actually shipped were at the current rate of thirty-five shillings a ton at that place. Add fifty per cent to that price, and a proportionate rate is attained. The words receive some effect.
The charter party shows, that the fact was contemplated of the inability of the agents of the charterers to procure dry hides- *467 at Buenos Ayres. Hence the provision to fill with other goods, and the liberty to do so, implied in the clause in question.
We are justified also in considering that the parties were acquainted with the nature and description of the commodities generally shipped from Buenos Ayres, to the designated ports in Europe. “Vessels chartered to load other produce at proportionate rates, run the risk of being loaded according to the convenience of the charterer, unless certain proportions of different articles are stipulated for. This may appear unjust; but on the other hand it must be supposed that no ship-owner would charter his vessel to' load at a foreign port, unless he was acquainted with the produce shipped at, and the customs of such port; and in case of his failure, by the necessary stipulations in the charter party to secure his vessel, he himself would be the only party to blame. A ship-owner, wishing to avoid all such risks, charters his vessel for a round sum to carry a cargo of legal merchandise."
Both parties then acted on the contract which presumes that other goods may be shipped, and on the implication that such goods must be of the description usually made the subjects of shipment from Buenos Ayres. They have met the question of the freight to be paid, under such anticipated circumstances, by the clause in question. Nor is it at all unreasonable to presume that the parties had some knowledge of the rates of freight of the articles which were usually shipped at that port. This assumption is not interpolating new and other terms into a contract. It is introducing facts, justly to be inferred as known to the parties, to interpret any ambiguity in their agreement.
The ship-owner secures to himself, by the agreement thus understood, a certain premium upon the current rate of freight of the articles which his ship shall in fact carry. Whatever is the proportion between the £6 per ton stipulated, and the current freight of dry hides from Buenos Ayres, that proportion shall regulate the increase of premium upon the current freight of what is transported. Thus in the present instance, the difference between the rates for hides was £2, or fifty per cent, the current freight there being £4. This premium or advance upon the £115s., the freight of the bones, gives £2 12s. 6d., payable to the ship-owner.
*468 So the effect in relation to the charterer is, to protect him from paying the full freight of £6, as if he had shipped hides, when probably the profit of his adventure from his inability to procure them, might be much less than if his apparently main object had been realized by obtaining them.
I think the judgment must be reversed, and the amount adjusted upon the principles stated. If the parties do not settle this among themselves, a new trial must be had, with costs to abide the event.
Pierrefont, J., concurred with Judge Hoffman.